# EXHIBIT A



# JUAN FERNANDEZ-BARQUIN
## CLERK OF THE COURT AND COMPTROLLER
### MIAMI-DADE COUNTY

Contact Us    My Account    

# CIVIL, FAMILY AND PROBATE COURTS ONLINE SYSTEM

◀◀ BACK

**QUANTUM HOSPITAL PATHOLOGY, LLC VS UNITED HEALTHCARE OF FLORIDA, INC. ET AL**

| | | | |
|---|---|---|---|
| **Local Case Number:** | 2023-026579-CA-01 | **Filing Date:** | 11/14/2023 |
| **State Case Number:** | 132023CA02657901GE01 | **Judicial Section:** | CA44 - Downtown Miami |
| **Consolidated Case No.:** | N/A | **Court Location:** | 73 West Flagler Street, Miami FL 33130 |
| **Case Status:** | OPEN | **Case Type:** | Business Torts |

≔ Related Cases                                                    Total Of Related Cases: 0  ✚

👥 Parties                                                          Total Of Parties: 4  ✚

🔧 Hearing Details                                                  Total Of Hearings: 1  ✚

🔊 Dockets                                                          Total Of Dockets: 6  ━

| | DIN | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| | | 02/28/2024 | | Case Management Conference | Hearing | **INITIAL CMC** |
| 📄 | 6 | 12/03/2023 | | Order Setting CM Deadline | Event | |
| 📄 | 5 | 12/03/2023 | | Order Setting CM Deadline | Event | |
| | 4 | 11/17/2023 | | Receipt: | Event | **RECEIPT#:3120011 AMT PAID:$401.00 NAME:PATRICK SHANAN MONTOYA WHITFIELD COLEMAN MONTOYA 201 ALHAMBRA CIRCLE SUIT CORAL GABLES FL 33134-7411 COMMENT: ALLOCATION CODE QUANTITY UNIT AMOUNT 3100-CIRCUIT FILING FEE 1 $401.00 $401.00 TENDER TYPE:EFILINGS TENDER AMT:$401.00 RECEIPT DATE:11/17/2023 REGISTER#:312 CASHIER:EFILINGUSER** |
| 📄 | 2 | 11/14/2023 | | Complaint | Event | |
| 📄 | 1 | 11/14/2023 | | Civil Cover Sheet - Claim Amount | Event | |

◀◀ BACK

**Please be advised:**

The Clerk's Office makes every effort to ensure the accuracy of the following information; however it makes no warranties or representations whatsoever regarding the completeness, accuracy, or timeliness of such information and data. Information on this website has been posted with the intent that it be readily available for personal and public non-commercial (educational) use and to provide the public with direct online access to information in the Miami-Dade Clerk's Office information systems.

Other than making limited copies of this website's content, you may not reproduce, retransmit, redistribute, upload or post any part of this website, including the contents thereof, in any form or by any means, or store it in any information storage and retrieval system, without prior written permission from the Miami-Dade Clerk's Office.

If you are interested in obtaining permission to reproduce, retransmit or store any part of this website beyond that which you may use for personal use, as defined above, visit our **Web API Services**. You can review the complete **Miami-Dade County Disclaimer**

### General

Online Case Home

Civil / Family Courts Information

Login

### Help and Support

Clerk's Home

Privacy Statement

ADA Notice

Disclaimer

Contact Us

About Us



Juan Fernandez-Barquin
Clerk of the Court and Comptroller
Miami-Dade County

73 W. Flagler Street
Miami, Florida 33130

305-275-1155

©2023 Clerk of the Courts. All rights reserved.





Filing # 186087171 E-Filed 11/14/2023 12:31:13 PM

IN THE CIRCUIT COURT OF THE
11ᵗʰ JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION
DIVISION

Quantum Hospital Pathology, LLC.,                    CASE NO.:

        Plaintiff,

v.

UNITED HEALTHCARE OF FLORIDA,
INC. and UNITED HEALTHCARE
INSURANCE COMPANY, and
NEIGHBORHOOD HEALTH
PARTNERSHIP, INC.,

        Defendants.

_____/

## COMPLAINT

Plaintiff, Quantum Hospital Pathology, LLC. ("Plaintiff") hereby files this Complaint against Defendants UnitedHealthcare of Florida, Inc. and UnitedHealthcare Insurance Company (collectively, "UnitedHealthcare") and Neighborhood Health Partnership, Inc. ("NHP") (all defendants collectively, "Defendants") for declaratory and supplemental relief pursuant to Chapter 86 of the Florida Statutes, quantum meruit and breach of contract implied in law, and in support thereof, states as follows:

## I.   JURISDICTION, PARTIES, AND VENUE

1.   This is an action for declaratory decree and supplemental relief pursuant to Florida Statutes Chapter 86, and the amount in controversy exceeds $750,000, exclusive of attorney's fees and costs. *See* Fla. Const. Art. V § 5; Fla. Stat. § 86.011.

1

2.      Plaintiff is a Florida professional association. Plaintiff provides professional clinical and anatomic pathology services to the Defendants' members or subscribers at hospitals in Florida.

3.      Plaintiff, Quantum Hospital Pathology, LLC. has its principal address at 151 East Redstone Ave., Crastview, FL 32593 and provides professional clinical and anatomic pathology services at North Okaloosa Medical Center.

4.      Defendant UnitedHealthcare of Florida, Inc. ("UHCF") is a Florida corporation authorized to do business and doing business in Miami-Dade County, Florida. UHCF is a health maintenance organization licensed and operating under Florida Statutes Chapter 641 and Florida Administrative Code, Chapter 69O-191.

5.      Defendant UnitedHealthcare Insurance Company ("UHCIC") is a Connecticut corporation authorized to do business and doing business in Miami-Dade County, Florida. UHCIC is a licensed health insurer offering multiple lines of business in Florida, including in Miami-Dade County.

6.      Defendant NHP is a Florida corporation authorized to do business, and doing business in Miami-Dade County, Florida. NHP is a health maintenance organization ("HMO") licensed and operating under Florida Statutes Chapter 641. Defendant NHP is a wholly owned subsidiary of UnitedHealthcare.

7.      At all times relevant hereto, Defendants acted by and through their respective employees, agents, apparent agents, and representatives, who were acting within the course and scope of their employment, agency, apparent agency, and representation relationship with Defendants and in the furtherance of each company's respective interests.

8.      Venue is proper in Miami-Dade County pursuant to Florida Statutes section 47.051 because the cause of action accrued in Miami-Dade County. Moreover, UnitedHealthcare has or usually keeps an office for transaction of its customary business, located at 7600 NW 19th Street, Miami, FL 33126.

9.      Venue is further proper in Miami-Dade County as, upon information and belief, Defendants made their decision and the policy at issue in this Complaint in Miami-Dade County.

## II.      GENERAL ALLEGATIONS

10.     This lawsuit concerns Defendants' obligation to pay hospital-based pathologists properly and fully for admittedly covered, professional anatomical and clinical medical services they rendered to Defendants' members/subscribers.

11.     By way of admission and otherwise through its operations, Defendants have conceded that all the professional services at issue are in fact covered services, resulting in this lawsuit not implicating ERISA nor otherwise calling into question the terms of any individual insurance plans.

12.     Plaintiff is an exclusive provider of professional clinical and anatomic pathology services[1], some of which are emergency services and care, for patients at Hospitals they service (the "Hospitals").

---

[1] The professional component of clinical pathology and anatomic pathology rendered by Plaintiff and its physicians includes (a) the medical clinical oversight and supervision of the laboratory as an entity and assuring that tests, examinations, and procedures are properly performed, recorded and reported, (b) designing protocols and establishing parameters for performance of clinical testing, (c) directing, performing, and evaluating quality assurance and control procedures, (d) selecting, evaluating, and validating test methodologies, (e) the professional medical supervision of the technical personnel in the performance of their duties, and (f) the quality and timeliness of the test results, the communication and/or interpretation of the results with and for the ordering physician and interacting with the members of the medical

3

13.     At all times material hereto, there was no written agreement in force or effect between Plaintiff and Defendants.  Additionally, Plaintiff was required by law to bill only Defendants for payment for the professional clinical and anatomic pathology services Plaintiff provided to Defendants' members/subscribers at the Hospitals.

14.     Nonetheless and without exception, Plaintiff provides professional clinical and anatomic pathology services to Defendants' members/subscribers upon admission to the emergency room or upon admission to the above Hospitals.

15.     Plaintiff is what is known as a "non-participating" or "non-par" provider of professional clinical and anatomic pathology services to Defendants' Members at the above Hospitals.

16.     "Non-participating" or "non-par" providers are commonly referred to as "out-of-network" providers and these terms are equivalent.

17.     Defendants knew that the professional clinical and anatomic pathology services required by subscribers of its HMO/PPO/EPO who were admitted to the Hospitals would be provided by Plaintiff.  Prior to the institution of this action Plaintiff provided professional clinical

---

staff regarding issues of laboratory operation, quality, test availability and recommending appropriate follow-up diagnostic tests, when appropriate.

The sum of these two components—the technical component and the professional component—is sometimes referred to as the global service. Billing for clinical laboratory tests was accomplished by: (1) Plaintiff billing the Defendants for the professional component, and (2) the hospital billing the Defendants for the technical component.

*See* Coding Communication: Professional Component for Clinical Laboratory Services, 15 AMA CPT Assistant 9-10 (2005); and, Technical vs. Professional Component, 9 AMA CPT Assistant 1-9 (1999).

**Whitfield Coleman & Montoya**
201 Sevilla Avenue, Sutie 200, Coral Gables, Florida 33134 Telephone: (786) 206-7274 Fax: (786) 206-6110

and anatomic pathology services to commercial/non-Medicare subscribers of Defendants admitted to the Hospitals at the request of the admitting physician or for emergency room services.

     18.    Based on prior course of dealings and the below discussed Florida legal framework to which Defendants are subject, Defendants were required to have directly paid Plaintiff for the professional clinical and anatomic pathology services rendered in the Hospitals to Defendants' commercial, non-Medicare subscribers.

     19.    Defendants benefited from the services Plaintiff provided to subscribers of its insurance plans and knew that Plaintiff, as the providers of the professional clinical and anatomic pathology services, expected to be paid for said services.

     20.    Plaintiff submitted claims to Defendants for the professional clinical and anatomic pathology services provided at the Hospitals to Defendants' commercial/non-Medicare subscribers seeking reasonable compensation for said services.

     21.    Defendants have underpaid Plaintiff, without exception, for the admittedly covered, professional medical services they rendered to Defendants' members/subscribers at issue in this Complaint.

     22.    Plaintiff does not get paid from the Hospitals they service for the professional clinical and anatomic pathology services.

     23.    Instead, Plaintiff has contracts with the Hospitals that they service providing that the Plaintiff has the exclusive right to bill and collect for the professional clinical and anatomic pathology services at issue in this Complaint.  In turn, the above Hospitals have the exclusive right to bill and collect for what is known as the Technical Component of Pathology Services.[2]

---

[2] The Technical Component is rendered and billed for by the Hospitals' staff and includes the allocated costs of equipment, chemicals or other reagents, utilities, and salaries of technical

**A.      Defendants have an extensive history of recognizing and paying for the professional clinical and anatomic pathology services at issue in this Complaint.**

24.      Defendants have expressly acknowledged in contracts with multiple Florida pathologists, rendering the same exact professional clinical and anatomic pathology services at issue here, are covered services under Florida law.

25.      Defendants had contracts with multiple pathology groups throughout the State of Florida, providing specific and agreed-upon reimbursement for the identical services at issue in this action.

26.      Defendants' multiple similar contracts, which are in the public domain, with other pathology groups throughout the State of Florida contained the following language:

> The payments described in the attached Fee Information Document include value for the professional component of clinical pathology serviced rendered by [PATHOLOGY GROUP] to any Customer of United. Notwithstanding the terms of any Customer's Benefit Plan or of United's current or future Payments Policies or Protocols, such services represent the supervision and interpretation of procedures that are performed under the supervision of [PATHOLOGY GROUP], in accordance with protocols established by [PATHOLOGY GROUP], which are presented by the laboratory reports included in each Customer's medical records, and which directly contribute to the diagnosis and treatment of each Customer.

27.      Upon information and belief, Defendants have also signed multiple subsequent contracts with pathology groups throughout the State of Florida paying for the very same services at issue here.

---

personnel to collect specimens, run the equipment and generate a quantitative or qualitative result. Importantly, the hospital staff if overseen and supervised by Plaintiff. Moreover, the above hospital's laboratory cannot be accredited or legally function without Plaintiff serving as Medical Director and overseeing and supervising hospital staff.

*See* Coding Communication: Professional Component for Clinical Laboratory Services, 15 AMA CPT Assistant (2005) at 9.

28.     The aforementioned contracts between Defendants and other pathology groups establish and constitute an admission that payment for the services at issue in this case is solely a "rate of payment" issue, only, and does not call into question any coverage determinations or the terms of any plan documents.

**B.     Defendants' illegal Commercial Reimbursement Policy is that they allegedly pay the Hospitals for professional clinical and anatomic pathology services and do not pay for "duplicative laboratory services."**

29.     Defendants refused to pay or pay an unreasonably undervalued or arbitrary amount based solely on their "Commercial Reimbursement Policy," *infra,* that does not take into consideration contracted rates with pathologists throughout the State of Florida  into their payments to non-participating providers, like Plaintiff, an analysis as required by Florida law, regardless of the member's/subscriber's insurance plan.

30.     Defendants have ignored their contracts with other pathology groups in the State of Florida, admissions that the professional clinical and anatomic pathology services are not only covered, but at certain rates.

31.     Defendants have also ignored their course of dealing with Florida pathologists and Florida law in their payment policy, the "Commercial Reimbursement Policy," *infra,* for non-participating providers, such as Plaintiff.

32.     Defendants underpaid Plaintiff for hundreds of thousands of dollars in professional clinical and anatomic pathology services because Defendants did not consider its contracts with other Florida pathologists when determining the usual, customary and reasonable rates "(UCR") for the professional clinical and anatomic pathology services Plaintiff rendered to members/subscribers of Defendants' HMO and/or PPO/EPO policies.

33.     Plaintiff has notified Defendants of the improperly reimbursed professional clinical and anatomic pathology services[3], including identification of the specific patients to whom Plaintiff has provided professional clinical and anatomic pathology services, and demanded proper payment of said professional clinical and anatomic pathology services.

34.     To date, Plaintiff has not been properly compensated by Defendants for the professional clinical and anatomic pathology services Plaintiff rendered to members/subscribers of Defendants' HMO and/or PPO/EPO policies.

35.     Plaintiff has likewise not been compensated by the respective facilities/Hospitals, or patients themselves, for the professional clinical and anatomic pathology services Plaintiff has rendered to members/subscribers of Defendants' policies.

36.     Defendant has a "Commercial Reimbursement Policy" numbered "2023R0010A" that Defendants have adopted, published, and relied upon that existed in similar or substantially similar form for the last five years. Ex. A, Defendants' Commercial Reimbursement Policy, Professional Policy number 2023R0010A.[4]

37.     The Commercial Reimbursement Policy states in material part, "The established policy for reimbursement of laboratory services performed in a facility setting is consistent with [Defendants'] policy not to pay for duplicative laboratory services."

38.     The Commercial Reimbursement Policy further states that,

> "Manual and automated laboratory services submitted with a CMS facility POS [Hospital Locations] will not be reimbursable. **These services are reimbursable to the facility. When facilities obtain manual or automated laboratory tests for patients under arrangements with . . .**

---

[3] A Claim spreadsheet with claims at issue have been provided to Defendants, and is not attached to this Complaint because the spreadsheet contains HIPAA protected information.

[4] Plaintiff does not have the previous year's Laboratory Service Policy but upon information and belief it is identical or substantially similar to Professional Policy number 2023R0010A. Plaintiff will request the earlier years Laboratory Service Policy in discovery.

8

**[a] pathology group, only the facility may be reimbursed for the services."** (Emphasis supplied).

*See* Defendants' Commercial Reimbursement Policy, Professional Policy number 2023R0010A.

39.     The above referenced Hospitals do not bill Defendants for the professional clinical and anatomic pathology services at issue in this Complaint, nor do the Hospitals render those professional clinical and anatomic pathology services.

40.     All conditions precedent to bringing this case have or will be satisfied.

**<u>COUNT I</u>**
**(Declaratory Relief Against All Defendants for**
**Professional Clinical and Anatomic Pathology)**

41.     Plaintiff incorporates and realleges the allegations contained in paragraphs 1 through 40 as if fully set forth herein.

42.     This is a count for declaratory relief pursuant to Chapter 86 of the Florida Statutes.

43.     Section 86.011 provides the Court jurisdiction to declare the existence or nonexistence of any immunity, power, privilege or right; or of any fact upon which the existence or nonexistence of such immunity, power, privilege or right now exists or will arise in the future.

44.     Florida Statutes section 86.021 expressly provides that any person whose rights, status, or other equitable or legal relations are affected by a statute, or any regulation made under statutory authority, or other article, memorandum, or instrument in writing may have determined any question of construction or validity arising under such statute, regulation, or other article, memorandum or instrument in writing, or any part thereof and obtain a declaration of rights, status, or other equitable or legal relations thereunder.

45.     Plaintiff contends that Florida law is clear, and the  contracts between Defendants with Florida pathologists are admissions that Defendants must pay Plaintiff for the professional clinical and anatomic pathology services it rendered to members/subscribers of Defendants' HMO

9

and PPO/EPO policies based on the UCR analysis and the legal requirement to take into account Defendants' contracts with Florida pathologists for the very same services at issue here.

46.     Plaintiff further seeks a declaratory decree that Defendants' "Commercial Reimbursement Policy" numbered "2023R0010A" that existed in similar or substantially similar form for the last five years is wholly erroneous and inaccurate under Florida law because: a) the "duplicative laboratory services" in Defendants' above-referenced Commercial Reimbursement Policy are not "duplicative laboratory services"; b) the professional clinical and anatomic pathology services are not reimbursable to the "facility" ("Hospitals"), but directly to Plaintiff; and c) Defendants do not in fact pay the Hospitals for the professional clinical and anatomic pathology services.

47.     Plaintiff further seeks a declaratory judgment that Defendants have violated, and continue to violate Florida law, specifically Fla. Stat. Chapters 627 and 641, as recognized by the Third District Court of Appeal in *Health Options, Inc. v. Palmetto Pathology Services*, P.A., 983 So. 2d 608 (Fla. 3d DCA 2008) and the First District Court of Appeal in *Baker County Medical Services, Inc. v. Aetna Health Mgmt., LLC*, 31 So. 3d 842 (Fla. 1st DCA 2010) by: a) refusing to take into account contract rates with other pathology groups throughout the State of Florida for the subject professional clinical and anatomic pathology services provided by Plaintiff to members/subscribers of Defendants' policies; b) utilizing the above-referenced Commercial Reimbursement Policy illegally and classifying and the professional clinical and anatomic pathology services as "duplicative laboratory services" when they are not in fact "duplicative laboratory services"; c) utilizing the above-referenced Commercial Reimbursement Policy illegally and enforcing the Commercial Reimbursement Policy to allegedly pay the "facility" ["Hospitals"] for the professional clinical and anatomic pathology services and not Plaintiff; and

**Whitfield Coleman & Montoya**
201 Sevilla Avenue, Sutie 200, Coral Gables, Florida 33134 Telephone: (786) 206-7274 Fax: (786) 206-6110

d) failing to adequately and properly reimburse at Plaintiff at UCR for the professional clinical and anatomic pathology services.

48.     As a result, there is a present, actual, bona fide dispute between the parties.

49.     Plaintiff requests a declaration with respect to the following:

**General Declarations**

a.     Plaintiff is a non-contracted provider of professional clinical and anatomic pathology services to Defendants' members/subscribers;

b.     The professional clinical and anatomic pathology services are physician care in the form of supervision and interpretation of clinical and anatomic laboratory examinations rendered by Plaintiff to members/subscribers of Defendants' policies as set forth in Florida Statutes section 483.803(3);

c.     Plaintiff has not been compensated by the Hospitals for the professional clinical and anatomic pathology services rendered to members/subscribers of Defendants' policies by Plaintiff and billed to Defendants;

d.     The professional clinical and anatomic pathology services rendered by Plaintiff to members/subscribers of Defendants' policies are part of the covered and medically necessary services that Defendants admitted were covered medical services with value under contracts with pathologists in the State of Florida;

e.     The compensation that Defendants pay to the facilities/Hospitals under their Commercial Reimbursement Policy number 2023R0010A and the same or similar policies the last four years are not payment for Plaintiff's professional clinical and anatomic pathology services;

f.     Plaintiff's professional clinical and anatomic pathology services are not duplicative laboratory services under Defendants' Commercial Reimbursement Policy number 2023R0010A or similar policies the last four years;

g.     Defendants, by virtue of their Commercial Reimbursement Policy number 2023R0010A or similar policies the last four years, have admitted the professional clinical and anatomic pathology services rendered by Plaintiff are covered and medically necessary medical services with value by Defendants;

h.     Paying for professional clinical and anatomic pathology services is not contrary to Defendants' Policy number 2023R0010A and the same or similar policies the last four years;

      i.     Defendants must pay the UCR of the professional clinical and anatomic pathology services, which is the "fair market value" consistent with *Baker County Medical Services, Inc. v. Aetna Health Management, LLC*, 31 So. 3d 842, 845 (Fla. 1st DCA 2010);

      j.     Defendants must take into account their contract rates with pathologists throughout the State of Florida for professional clinical and anatomic pathology services before determining the UCR to non-participating providers, like Plaintiff;

      k.     Defendants must take into account its contract rates for the professional clinical and anatomic pathology services before determining its UCR to non-participating providers, like Plaintiff;

      l.     Plaintiff is entitled to costs and pre- and post- judgment interest on all underpaid professional clinical and anatomic pathology services claims;

**HMO Declarations**

      m.     Florida Statutes section 641.3154(1) prohibits Plaintiff from seeking payment from members/subscribers of Defendants' HMO policies, for any service, including Plaintiff's professional clinical and anatomic pathology services rendered to members/subscribers of Defendants' policies and billed to Defendants;

      n.     professional clinical and anatomic pathology services are physician care rendered by Plaintiff to members/subscribers of Defendants' HMO policies as set forth in Florida Statutes section 483.041(3);

      o.     Plaintiff is a non-contracted provider for health care services as contemplated by Florida Statute section 641.3154 and Defendants are liable for payment of billed charges to Plaintiff for professional clinical and anatomic pathology services rendered to members/subscribers of Defendants' policies;

      p.     All of Plaintiff's billing for professional clinical and anatomic pathology services rendered to members/subscribers of Defendants' policies were not promptly paid by Defendants pursuant to Florida Statutes section 641.3155 and the overdue payments accrue simple interest at a rate of 12% per year beginning on the day the claim should have been paid by Defendants;

      q.     Plaintiff is entitled to supplemental relief and a monetary award that compensates Plaintiff for the underpaid professional clinical and anatomic pathology services rendered to members/subscribers of Defendants' policies, plus interest, pursuant to Florida Statutes section 641.3155, as well as costs;

**PPO/EPO Declarations**

      r.     Florida Statutes section 627.64194(2)-(3) prohibits Plaintiff from seeking payment from members/subscribers of UnitedHealthcare's policies, for any service, including professional

clinical and anatomic pathology services rendered to members/subscribers of Defendants' policies and billed to Defendants;

       s.     Plaintiff is a nonparticipating provider for health care services as contemplated by Florida Statute section 627.64194 and Defendants are liable for payment of billed charges to Plaintiff for professional clinical and anatomic pathology services rendered to members/subscribers of Defendants' policies;

       t.     Pathology Services are covered emergency and nonemergency service under Florida Statute 627.64194;

       u.     All of Plaintiff's billing for professional clinical and anatomic pathology services rendered to members/subscribers of UnitedHealthcare's policies were not paid by Defendants pursuant to Florida Statutes section 627.64194 and section 641.513(5) within the applicable timeframe and the overdue payments accrue simple interest at a rate of 12% per year beginning on the day the claim should have been paid by Defendants provided by Florida Statutes section 627.6131; and

       v.     Plaintiff is entitled to supplemental relief and a monetary award that compensates Plaintiff for the underpaid professional clinical and anatomic pathology services rendered to members/subscribers of Defendants' policies, plus interest, pursuant to Florida Statute section 627.6131, as well as costs.

      89.     As a direct and proximate result of Defendants' acts and omissions the Plaintiff sustained damages and have been deprived of the full compensation to which Plaintiff is entitled to receive for providing physician services, including professional clinical and anatomic pathology services and clinical laboratory examinations discussed in this Complaint to Defendants' members/subscribers.

      90.     The existence of another potentially adequate remedy does not preclude a judgment for declaratory relief. Fla. Stat. §86.111.

      91.     Plaintiff is entitled to supplemental relief pursuant to Florida Statutes section 86.061, including the payment of all money that was not paid or under paid to Plaintiff by Defendant for professional clinical and anatomic pathology services rendered, including physician health care services and Health Testing Services to its members/subscribers and interest pursuant

Whitfield Coleman & Montoya
201 Sevilla Avenue, Suite 200, Coral Gables, Florida 33134 Telephone: (786) 206-7274 Fax: (786) 206-6110

to Florida Statutes section 627.6131 and 641.3155.

92.    Pursuant to Florida Statutes section 86.081, Plaintiff is entitled to costs as are equitable.

WHEREFORE, Plaintiff respectfully requests that the Court enter a final declaratory decree judgment finding that:

**General Declarations**

a.  Plaintiff is a non-contracted provider of professional clinical and anatomic pathology services to Defendants' members/subscribers;

b.  The professional clinical and anatomic pathology services are physician care in the form of supervision and interpretation of clinical and anatomic laboratory examinations rendered by Plaintiff to members/subscribers of Defendants' policies as set forth in Florida Statutes section 483.803(3);

c.  Plaintiff has not been compensated by the Hospitals for the professional clinical and anatomic pathology services rendered to members/subscribers of Defendants' policies by Plaintiff and billed to Defendants;

d.  The professional clinical and anatomic pathology services rendered by Plaintiff to members/subscribers of Defendants' policies are part of the covered and medically necessary services that Defendants admitted were covered medical services with value under contracts with pathologists in the State of Florida;

e.  The compensation that Defendants pay to the facilities/Hospitals under their Commercial Reimbursement Policy number 2023R0010A and the same or similar policies the last four years are not payment for Plaintiff's professional clinical and anatomic pathology services;

f.  Plaintiff's professional clinical and anatomic pathology services are not duplicative laboratory services under Defendants' Commercial Reimbursement Policy number 2023R0010A or similar policies the last four years;

g.  Defendants, by virtue of their Commercial Reimbursement Policy number 2023R0010A or similar policies the last four years, have admitted the professional clinical and anatomic pathology services rendered by Plaintiff are covered and medically necessary medical services with value by Defendants;

**Whitfield Coleman & Montoya**
**201 Sevilla Avenue, Suite 200, Coral Gables, Florida 33134 Telephone: (786) 206-7274 Fax: (786) 206-6110**

h.  Paying for professional clinical and anatomic pathology services is not contrary to Defendants' Policy number 2023R0010A and the same or similar policies the last four years;

i.  Defendants must pay the UCR of the professional clinical and anatomic pathology services, which is the "fair market value" consistent with *Baker County Medical Services, Inc. v. Aetna Health Management, LLC*, 31 So. 3d 842, 845 (Fla. 1st DCA 2010);

j.  Defendants must take into account their contract rates for professional clinical and anatomic pathology services with pathologists throughout the State of Florida before determining the UCR to non-participating providers, like Plaintiff;

k.  Defendants must take into account its contract rates for the professional clinical and anatomic pathology services before determining its UCR to non-participating providers, like Plaintiff;

l.  Plaintiff is entitled to costs and pre- and post- judgment interest on all underpaid professional clinical and anatomic pathology services claims;

**HMO Declarations**

m.  Florida Statutes section 641.3154(1) prohibits Plaintiff from seeking payment from members/subscribers of Defendants' HMO policies, for any service, including Plaintiff's professional clinical and anatomic pathology services rendered to members/subscribers of Defendants' policies and billed to Defendants;

n.  professional clinical and anatomic pathology services are physician care rendered by Plaintiff to members/subscribers of Defendants' HMO policies as set forth in Florida Statutes section 483.041(3);

o.  Plaintiff is a non-contracted provider for health care services as contemplated by Florida Statute section 641.3154 and Defendants are liable for payment of billed charges to Plaintiff for professional clinical and anatomic pathology services rendered to members/subscribers of Defendants' policies;

p.  All of Plaintiff's billing for professional clinical and anatomic pathology services rendered to members/subscribers of Defendants' policies were not promptly paid by Defendants pursuant to Florida Statutes section 641.3155 and the overdue payments accrue simple interest at a rate of 12% per year beginning on the day the claim should have been paid by Defendants;

q.  Plaintiff is entitled to supplemental relief and a monetary award that compensates Plaintiff for the underpaid professional clinical and anatomic pathology services rendered to members/subscribers of Defendants' policies, plus interest, pursuant to Florida Statutes section 641.3155, as well as costs;

**Whitfield Coleman & Montoya**
201 Sevilla Avenue, Sutie 200, Coral Gables, Florida 33134 Telephone: (786) 206-7274 Fax: (786) 206-6110

**PPO/EPO Declarations**

r.   Florida Statutes section 627.64194(2)-(3) prohibits Plaintiff from seeking payment from members/subscribers of UnitedHealthcare's policies, for any service, including professional clinical and anatomic pathology services rendered to members/subscribers of Defendants' policies and billed to Defendants;

s.   Plaintiff is a nonparticipating provider for health care services as contemplated by Florida Statute section 627.64194 and Defendants' are liable for payment of billed charges to Plaintiff for professional clinical and anatomic pathology services rendered to members/subscribers of Defendants' policies;

t.   Pathology Services are covered emergency and nonemergency service under Florida Statute 627.64194;

u.   All of Plaintiff's billing for professional clinical and anatomic pathology services rendered to members/subscribers of Defendants' policies were not paid by UnitedHealthcare pursuant to Florida Statutes section 627.64194 and section 641.513(5) within the applicable timeframe and the overdue payments accrue simple interest at a rate of 12% per year beginning on the day the claim should have been paid by Defendants' provided by Florida Statutes section 627.6131; and

v.   Plaintiff is entitled to supplemental relief and a monetary award that compensates Plaintiff for the underpaid professional clinical and anatomic pathology services rendered to members/subscribers of Defendants' policies, plus interest, pursuant to Florida Statute section 627.6131, as well as costs.

## <u>COUNT II</u>
**(Quantum Meruit for partially paid Professional Anatomic Pathology Services against all Defendants)**

93.   Plaintiff incorporates and realleges the allegations contained in paragraphs 1 through 40 as if fully set forth herein.

94.   Certain of Plaintiff's professional anatomic pathology claims have been paid directly to Plaintiff, albeit underpaid/partially paid.

95.   Without exception, Plaintiff has appealed those professional anatomic pathology claims with Defendants based on underpaying the UCR.

93.   Based upon the underpayment of the UCR on the professional anatomic pathology

claims, there is no need for the Court to review whether the subject services are covered services under Defendants' insurance policies, therefore, ERISA is not implicated.

94.     Defendants authorized professional anatomic pathology services for which Plaintiff billed, thus assenting to the professional anatomic pathology services, when they knew or should have known, that Plaintiff's services were part of that testing procedure.

95.      Defendants knew or should have known that Plaintiff expected full payment for its professional anatomic pathology services to Defendants' members/subscribers, especially in light of their past dealings and the bills submitted to Defendants.

96.     Defendants have received the benefit of the professional anatomic pathology services performed by Plaintiff and rendered to Defendants' members/subscribers.

97.     By accepting Plaintiff's professional anatomic pathology services to its commercial members/subscribers without properly paying for said services, Defendants benefited at the expense of Plaintiff in the amount representing the full UCR of the professional anatomic pathology services provided by Plaintiff.

98.     Defendants have partially paid, or underpaid, the full reasonable value of the professional anatomic pathology services provided and submitted to Defendant for covered professional anatomic pathology services to Defendants' members/subscribers on behalf of Plaintiff together with statutory interest pursuant to Florida Statutes section 641.3155 and/or 627.6131 is owed to Plaintiff.

WHEREFORE, Plaintiff demand judgment against Defendants, together with all costs, pre- and post- judgment interests pursuant to Florida Statutes section 641.3155 and/or 627.6131 and any other such relief as the Court deems just and proper.

## COUNT III
### (Breach of Contract Implied in Law as to all Defendants for partially paid Anatomic Pathology Services Claims)

99.     Plaintiff incorporates and realleges the allegations contained in paragraphs 1 through 40 as if fully set forth herein.

100.    Certain of Plaintiff's professional anatomic pathology claims have been paid directly to Plaintiff, albeit underpaid/partially paid.

101.    Without exception, Plaintiff has appealed those professional anatomic pathology claims with Defendants based on underpaying the UCR.

102.    Based upon the underpayment of the UCR on the professional anatomic pathology claims, there is no need for the Court to review whether the subject services are covered services under Defendants' insurance policies, therefore, ERISA is not implicated.

103.    Plaintiff gave or conferred a direct benefit to Defendants, to wit, the rendering of medically necessary professional anatomic pathology services to Defendants' members/subscribers.

104.    Defendants knew of the benefit, by virtue of authorizing the admission of its commercial members/subscribers to the Hospitals and/or receiving the billing for the professional anatomic pathology services.

105.    Defendants accepted or retained the benefit of the professional anatomic pathology services performed by Plaintiff but have failed and refused to properly and fully pay Plaintiff for those services.

106.    The benefit flowed to Defendants, by virtue of having their insured receive the professional anatomic pathology services.

Whitfield Coleman & Montoya
201 Sevilla Avenue, Sutie 200, Coral Gables, Florida 33134 Telephone: (786) 206-7274 Fax: (786) 206-6110

107.   The circumstances are such that Defendants should, in all fairness, be required to fully pay for the benefit (i.e. the professional anatomic pathology services), as it would be inequitable for the Defendants to retain the benefit without paying full fair value for it.

108.   As a direct and proximate result of Defendants' actions described herein, Plaintiff has suffered damages.

109.   The damages suffered by Plaintiff is in excess of $750,000.00, plus statutory interest pursuant to Florida Statutes Chapters 641 and 627.

WHEREFORE, Plaintiff demands judgment against Defendants, together with all costs, pre- and post- judgment interests pursuant to Florida Statutes section 641.3155 and/or 627.6131 and any other such relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  November 14, 2023

Respectfully submitted,

**Whitfield Coleman & Montoya**
*Attorneys for Plaintiff*
201 Sevilla Ave., Suite 200
Coral Gables, Florida, 33134
Telephone:   (786) 206-7874
Facsimile:   (786) 206-6110
By: **/s/ Patrick S. Montoya**
Patrick S. Montoya, Esquire
Florida Bar No.: 0524441
pmontoya@thewcmfirm.com
Markus M. Kamberger, Esquire
Florida Bar No.: 111566
mkamberger@thewcmfirm.com

# Exhibit A

 UnitedHealthcare®

**Commercial Reimbursement Policy**
**CMS 1500**
**Policy Number 2023R0010A**

## Laboratory Services Policy, Professional

### IMPORTANT NOTE ABOUT THIS REIMBURSEMENT POLICY

*You are responsible for submission of accurate claims. This reimbursement policy is intended to ensure that you are reimbursed based on the code or codes that correctly describe the health care services provided. UnitedHealthcare reimbursement policies may use Current Procedural Terminology (CPT®*), Centers for Medicare and Medicaid Services (CMS) or other coding guidelines. References to CPT or other sources are for definitional purposes only and do not imply any right to reimbursement.*

*This reimbursement policy applies to all health care services billed on CMS 1500 forms and, when specified, to those billed on UB04 forms. Coding methodology, industry-standard reimbursement logic, regulatory requirements, benefits design and other factors are considered in developing reimbursement policy.*

*This information is intended to serve only as a general reference resource regarding UnitedHealthcare's reimbursement policy for the services described and is not intended to address every aspect of a reimbursement situation. Accordingly, UnitedHealthcare may use reasonable discretion in interpreting and applying this policy to health care services provided in a particular case. Further, the policy does not address all issues related to reimbursement for health care services provided to UnitedHealthcare enrollees. Other factors affecting reimbursement may supplement, modify or, in some cases, supersede this policy. These factors may include, but are not limited to: legislative mandates, the physician or other provider contracts, the enrollee's benefit coverage documents and/or other reimbursement, medical or drug policies. Finally, this policy may not be implemented exactly the same way on the different electronic claims processing systems used by UnitedHealthcare due to programming or other constraints; however, UnitedHealthcare strives to minimize these variations. UnitedHealthcare may modify this reimbursement policy at any time by publishing a new version of the policy on this Website. However, the information presented in this policy is accurate and current as of the date of publication.*

*\*CPT Copyright American Medical Association. All rights reserved. CPT® is a registered trademark of the American Medical Association.*

### Table of Contents

| | |
|---|---|
| **Application** | **2** |
| **Policy** | **2** |
| Overview | 2 |
| Reimbursement Guidelines | 2 |
| Place of Service | 2 |
| Date of Service | 3 |
| Provider Specialties Eligible for Reimbursement of Laboratory Services | 3 |
| Duplicate Laboratory Charges | 4 |
| Documentation Requirements for Reporting Laboratory Services | 5 |
| Laboratory Services Performed in a Facility Setting | 5 |
| Modifiers | 6 |
| Organ or Disease-Oriented Laboratory Panel Codes | 6 |
| Basic Metabolic Panel (Calcium, ionized), 80047 | 6 |
| Basic Metabolic Panel (Calcium, total), 80048 | 7 |
| General Health Panel, 80050 | 7 |
| Electrolyte Panel, 80051 | 7 |
| Comprehensive Metabolic Panel, 80053 | 7 |
| Obstetric Panel, 80055 | 8 |
| Lipid Panel, 80061 | 8 |
| Renal Function Panel, 80069 | 8 |
| Hepatic Function Panel, 80076 | 9 |
| Obstetric Panel, 80081 (Includes HIV testing) | 9 |
| Obstetric Panel, 80081 (Includes HIV testing) | 9 |
| Surgical Pathology | 10 |
| Venipuncture and Specimen Collection | 10 |

Proprietary information of UnitedHealthcare. Copyright 2023 United HealthCare Services, Inc.

![UnitedHealthcare]

| | |
|---|---|
| Venipuncture | 10 |
| Laboratory Handling | 11 |
| Clinical and Surgical Pathology Consultations (80503–80506 and 88321–88325) | 11 |
| Drug Assay Codes | 11 |
| Surgical Pathology for Prostate Needle Biopsy | 11 |
| **Definitions** | **11** |
| **Questions and Answers** | **13** |
| **Attachments** | **14** |
| **Resources** | **14** |
| **History** | **15** |

## Application

This reimbursement policy applies to services reported using the 1500 Health Insurance Claim Form (a/k/a CMS-1500) or its electronic equivalent or its successor form.  This policy applies to all products and all network and non-network physicians, and other qualified health care professionals (QHP), including, but not limited to, non-network authorized and percent of charge contract physicians and other QHP. This policy also applies to laboratories, including, but not limited to, independent, reference and referring laboratories.

## Policy

### Overview

This policy describes the reimbursement methodology for laboratory panels and individual Component Codes, as well as reimbursement for venipuncture services, laboratory services performed in a facility setting, laboratory handling, surgical pathology, clinical pathology consultations and drug assay codes. The policy also addresses place of service and date of service relating to laboratory services.

Duplicate laboratory code submissions by the same or multiple physicians or other QHP, as well as certain laboratory services provided in a facility place of service, are also addressed in this policy.

Note this policy does not address reimbursement for all laboratory codes. Coding relationships for laboratory topics not included within this policy are administered through the UnitedHealthcare "Rebundling" and "CCI Editing" policies.  All services described in this policy may be subject to additional UnitedHealthcare reimbursement policies including, but not limited to, the Rebundling and CCI Editing Policy, the CLIA Policy and the Professional/Technical Component Policy.

### Reimbursement Guidelines

### Place of Service

UnitedHealthcare uses the codes indicated in the Centers for Medicare and Medicaid Services (CMS) Place of Service (POS) Codes for Professional Claims Database to determine if laboratory services are reimbursable. For the purposes of this policy, a facility POS is considered POS 19, 21, 22, 23, 26, 34, 51, 52, 55, 56, 57 and 61. All other POS (e.g., 11, 81, etc.) are considered non-facility.

CMS Place of Service Database

The POS designation identifies the location where the laboratory Specimen was collected.  For example, if the Specimen is obtained:



- In an Independent Laboratory or a Reference Laboratory, POS 81 is reported.
- In an office/clinic or other non-facility setting, the appropriate non-facility POS is reported.
- In a facility setting, the appropriate facility POS is reported (e.g., patient is inpatient [POS 21] or outpatient [POS 22]).
- In a laboratory setting maintained by another physician or other QHP in their office/clinic, the POS code 99 for "Other Place of Service" is reported.

All entities billing for laboratory services should append identifying modifiers (e.g., 90), when appropriate, in accordance with correct coding.

For additional information, refer to the Questions and Answers section, Q&A #1.

| Date of Service |
| --- |

The date of service (DOS) on a claim for a laboratory test is the date the Specimen was collected and if collected over 2 calendar days, the DOS is the date the collection ended.

Note: United Healthcare will make an exception to the DOS policy for Advanced Diagnostic Laboratory Testing (ADLT) and molecular pathology tests excluded from the Outpatient Prospective Payment System (OPPS) packaging policy
- DOS for ADLTs and molecular pathology tests excluded from OPPS packaging policy may be noted as **the date the test was performed** if certain conditions are met:
  - (1) The test is performed following the date of a hospital outpatient's discharge from the hospital outpatient department
  - (2) The Specimen was collected from a hospital outpatient during an encounter
  - (3) It was medically appropriate to have collected the sample from the hospital outpatient during the hospital outpatient encounter
  - (4) The results of the test do not guide treatment provided during the hospital outpatient encounter; and
  - (5) The test was reasonable and medically necessary for the treatment of an illness.

| Provider Specialties Eligible for Reimbursement of Laboratory Services |
| --- |

**Reference Laboratory and Non-Reference Laboratory Providers:**
- Aligning with CMS, Reference Laboratories reporting laboratory services appended with modifier 90 are eligible for reimbursement.
- Non-Reference Laboratory physicians or other QHP reporting laboratory services appended with modifier 90 are not eligible for reimbursement.
- Physicians or other QHP who own laboratory equipment (Physician Office Laboratory) and perform laboratory testing report the laboratory service without appending modifier 90. These laboratory services are eligible for reimbursement.
- A valid Federal Clinical Laboratory Improvement Amendments (CLIA) Certificate Identification number is required for reimbursement of clinical laboratory services reported on a CMS 1500 Health Insurance Claim Form or its electronic equivalent.

Within the UnitedHealthcare Provider Administrative Guide it states, "You may only bill for services that you or your staff perform. Pass-through billing is not permitted and may not be billed to our members. We only reimburse for laboratory services that you are certified to perform through the federal CLIA. You must not bill our members for any laboratory services if you don't have the applicable CLIA certification."

For more complete information refer to the <u>UnitedHealthcare Provider Administration Guide</u>

For additional information, refer to the Questions and Answers section, Q&A #2

Proprietary information of UnitedHealthcare. Copyright 2023 United HealthCare Services, Inc.



For more complete information regarding CLIA requirements refer to the UnitedHealthcare "Clinical Laboratory Improvement Amendments (CLIA) ID Requirement Reimbursement Policy."

**Duplicate Laboratory Charges**

<u>Same Group Physician or Other QHP</u>
Only one laboratory service is reimbursable when Duplicate Laboratory Services are submitted from the Same Group Physician or Other QHP.

Separate consideration will be given to repeat procedures (i.e., two laboratory procedures performed the same day) by the Same Group Physician or Other QHP when reported with modifier 91. Modifier 91 is appropriate when the repeat laboratory service is performed by a different individual in the same group with the same Federal Tax Identification number.

According to CMS and CPT guidelines, Modifier 91 is appropriate when, during the course of treatment, it is necessary to repeat the same laboratory test for the same patient on the same day to obtain subsequent test results, such as when repeated blood tests are required at different intervals during the same day.

CPT instructions state that modifier 59 should not be used when a more descriptive modifier is available.  CMS guidelines cite that the –X {EPSU} modifiers are more selective versions of modifier 59 so it would be incorrect to include both modifiers on the same line.  Please refer to the "Modifiers" section for a complete listing of modifiers and their descriptions.

According to CMS and CPT coding guidelines, modifier 59, XE, XP, XS, or XU may be used when the same laboratory services are performed for the same patient on the same day. UnitedHealthcare will reimburse laboratory services reported with modifier 59, XE, XP, XS, or XU for different species or strains, as well as Specimens from distinctly separate anatomic sites.

For additional information, refer to the Questions and Answers section, Q&A #3, and #5.

According to the AMA and CMS, it is inappropriate to use modifier 76 or 77 to indicate repeat laboratory services. Modifiers 59, XE, XP, XS, XU, or 91 should be used to indicate repeat or distinct laboratory services when reported by the Same Group Physician or Other QHP. Separate consideration for reimbursement will not be given to laboratory codes reported with modifier 76 or 77.

<u>Multiple Physicians or Other QHP</u>
Only one laboratory provider will be reimbursed when multiple individuals report Duplicate Laboratory Services. Multiple individuals may include, but are not limited to, any physician or other QHP, Independent Laboratory, Reference Laboratory, Referring Laboratory or pathologist reporting duplicate services.

For additional information, refer to the Questions and Answers section, Q&A #4.

**Reference Laboratory and Non-Reference Laboratory Providers:**
If a Reference Laboratory and a Non-Reference Laboratory Provider submit Duplicate Laboratory Services only the Reference Laboratory service is reimbursable.

**Independent Laboratory, Reference Laboratory and Referring Laboratory:**
Laboratory services billed with modifier 90 by a Referring Laboratory are reimbursable if a duplicate claim has not been received from an Independent Laboratory or Reference Laboratory. Duplicate services are not reimbursable, unless one laboratory appends modifier 91 to the code(s) submitted.

**Pathologist and Physician Office Laboratory Providers:**
If a pathologist and Physician Office Laboratory provider submit Duplicate Laboratory Services, only the pathologist's service is reimbursable, unless the Physician Office Laboratory provider appends a modifier 91 to the codes submitted.

Proprietary information of UnitedHealthcare. Copyright 2023 United HealthCare Services, Inc.



**Commercial Reimbursement Policy**
**CMS 1500**
**Policy Number 2023R0010A**

For additional information, refer to the Questions and Answers section, Q&A #6

**Anatomic Pathology Services and Purchased Diagnostic Services:**
If both the purchaser and supplier who performed the service bill Duplicate Laboratory Services, only one service is reimbursable, unless modifier 59, XE, XP, XS, XU or 91 is appended. Purchased Diagnostic Tests do not apply to automated or manual laboratory tests. UnitedHealthcare uses the Centers for Medicare and Medicaid Services (CMS) National Physician Fee Schedule (NPFS) Professional Component/Technical Component (PC/TC) indicators 1, 6, and 8 to identify laboratory services that are eligible as Purchased Diagnostic Tests.
- PC/TC Indicator 1: Physician Service Codes (modifier TC and 26 codes)
- PC/TC Indicator 6: Laboratory Physician Interpretation Codes
- PC/TC Indicator 8: Physician Interpretation Codes

Purchased Laboratory Eligible Codes

For more complete information regarding when a professional or technical component is billed, refer to the UnitedHealthcare "Professional/Technical Component" policy. Refer to the UnitedHealthcare "Maximum Frequency per Day policy for additional information on assigned MFD values.

| **Documentation Requirements for Reporting Laboratory Services** |
| --- |

According to CMS, the physician or other QHP who is treating the patient must order all diagnostic laboratory tests, using these results in the management of the patient's condition. Tests not ordered by the physician or other QHP are not reasonable and necessary.

The physician's or other QHP's documentation should clearly indicate all tests to be performed. For example, "run labs" or "check blood" by itself does not support intent to order.

Documentation of an order or intent to order may include, for example:
- A signed order or requisition listing the specific test(s), or
- An unsigned order or requisition listing the specific test(s), and an authenticated medical record (e.g., progress notes or office notes) supporting the physician's intent to order the tests (for example, "order labs", "check blood", "repeat urine," or
- An authenticated medical record (e.g., office notes or progress notes) supporting the physician intent to order specific test(s), or
- Electronic requisitions are acceptable when the laboratory can demonstrate the order(s) was received through a standardized electronic process.

The medical record should include the documentation described above, as well as a copy of the test results.

For additional information, refer to the Questions and Answers section, Q&A #7.

| **Laboratory Services Performed in a Facility Setting** |
| --- |

The established policy for reimbursement of laboratory services performed in a facility setting is consistent with UnitedHealthcare's policy not to pay for duplicative laboratory services.

Manual and automated laboratory services submitted with a CMS facility POS 19, 21, 22, 23, 26, 34, 51, 52, 55, 56, 57 or 61 will not be reimbursable. These services are reimbursable to the facility. When facilities obtain manual or automated laboratory tests for patients under arrangements with an Independent Laboratory, Reference Laboratory or pathology group, only the facility may be reimbursed for the services.

Proprietary information of UnitedHealthcare. Copyright 2023 United HealthCare Services, Inc.



**Commercial Reimbursement Policy**
**CMS 1500**
**Policy Number 2023R0010A**

**Note:** UnitedHealthcare will make an exception to this policy for reproductive laboratory medicine procedures 89250-89398, molecular pathology laboratory procedures, Genomic Sequencing Procedures and Other Molecular Multianalyte Assays, and proprietary laboratory analysis procedures when the facility laboratory is not equipped or would not be expected to perform these specialized services and refers them to an appropriate laboratory. In the event that both a facility and an Independent Laboratory or Reference Laboratory report the same service on the same day for the same member, only the facility laboratory services may be reimbursed.

UnitedHealthcare uses the CMS National Physician Fee Schedule (NPFS) Professional Component/Technical Component (PC/TC) indicators 3 and 9 to identify laboratory services that are not reimbursable to an Independent Laboratory, Reference Laboratory or Non-Reference Laboratory Provider in a facility setting.

- PC/TC indicator 3: Technical Component Only Codes
- PC/TC indicator 9: PC/TC Concept Not Applicable

Laboratory Codes with a PC/TC Indicator 3 or 9

For more complete information on when a professional or technical component is billed refer to the UnitedHealthcare "Professional/Technical Component Policy."

**Modifiers**

| 59 | 90 | 91 | 92 | XE | XP | XS | XU |

**Organ or Disease-Oriented Laboratory Panel Codes**

Individual laboratory codes, which together make up an organ or disease-oriented laboratory Panel Code, will be combined into and reimbursed as the more comprehensive laboratory Panel Code as described under the specific laboratory panel headings below.  These panels are defined in the CPT book as codes 80047, 80048, 80050, 80051, 80053, 80055, 80061, 80069, 80074, 80076, and 80081. According to the CPT book, they were developed for coding purposes only and are not to be interpreted as clinical parameters. UnitedHealthcare uses CPT coding guidelines to define the components of each panel.

UnitedHealthcare also considers an individual component code included in the more comprehensive Panel Code when reported on the same date of service by the Same Individual Physician or Other QHP. The Professional Edition of the CPT ® book, Organ or Disease-Oriented Panel section states: "Do not report two or more Panel Codes that include any of the same constituent tests performed from the same patient collection. If a group of tests overlaps two or more panels, report the panel that incorporates the greater number of tests to fulfill the code definition and report the remaining tests using individual test codes (e.g., do not report 80047 in conjunction with 80053)."

When all components comprising a lab panel as described in CPT are submitted by the Same Individual Physician or Other QHP for the same patient on the same date of service, UnitedHealthcare will bundle them to the appropriate panel code. If a provider submits fewer than all the Component Codes that make up a panel, the Component Codes will be considered individually for reimbursement.

**Panel 80047**

There are 2 configurations for Panel CPT code 80047:

| **Configuration 1** |
| --- |
| **Includes Component Codes**:  82330, 82374, 82435, 82565, 82947, 84132, 84295, 84520. |

| **Configuration 2** |
| --- |
| **Includes the following Panel Code:** 80051 |

Proprietary information of UnitedHealthcare. Copyright 2023 United HealthCare Services, Inc.



| **Plus the following Component Codes**:<br>82330, 82565, 82947 and 84520 |
|---|

---

**Panel 80048**

There are 2 configurations for Panel CPT code 80048:

| **Configuration 1**<br>**Includes Component Codes**:  82310, 82374,<br>82435, 82565, 82947, 84132, 84295, 84520 |
|---|

| **Configuration 2**<br>**Includes the following Panel Code**: 80051 |
|---|
| **Plus the following Component Codes**:  82310,<br>82565, 82947, 84520 |

---

**Panel 80050**

There are 2 configurations for Panel CPT code 80050:

| **Configuration 1** | | | |
|---|---|---|---|
| **Includes the following Component Codes**:<br>82040, 82247, 82310, 82374, 82435, 82565, 82947,<br>84075, 84132, 84155, 84295, 84443, 84450, 84460,<br>84520 | | | |
| **Plus one of the following CBC or combination of<br>CBC Component Codes:** | | | |
| 85025 | 85027 +<br>85004 | 85027 +<br>85007 | 85027 +<br>85009 |

| **Configuration 2** | | | |
|---|---|---|---|
| **Includes the following Panel Code:** 80053 | | | |
| **Plus the following Component Code**: 84443 | | | |
| **Plus one of the following CBC or combination of<br>CBC Component Codes:** | | | |
| 85025 | 85027 +<br>85004 | 85027 +<br>85007 | 85027 +<br>85009 |

---

**Panel 80051**

| **Configuration 1**<br>**Includes the following Component Codes:**<br>82374, 82435, 84132, 84295 |
|---|

---

**Panel 80053**



There are 3 configurations for Panel CPT code 80053:

---

**Configuration 1**
**Includes the following Component Codes**: 82040, 82247, 82310, 82374, 82435, 82565, 82947, 84075, 84132, 84155, 84295, 84450, 84460, 84520

---

**Configuration 2**
**Includes the following Panel Code:** 80048

**Plus the following Component Codes:**  82040, 82247, 84075, 84155, 84450, 84460

---

**Configuration 3**
**Includes the following Panel Code:** 80051
**Plus the following Component Codes:**  82040, 82247, 82310, 82565, 82947, 84075, 84155, 84450, 84460, 84520

---

**Panel 80055**

---

**Configuration 1**
**Includes the following Component Codes:** 86592, 86762, 86850, 86900, 86901, 87340
**Plus one of the following CBC or combination of CBC Component Codes:**

| 85025 | 85027 + 85004 | 85027 + 85007 | 85027 + 85009 | |

**NOTE:** The CPT code 87340 is a component code of both the Panel CPT codes 80055 or 80081 and the Panel CPT code 80074. The Panel CPT codes 80055 or 80081 takes Precedence.

---

**Panel, 80061**

---

**Configuration 1**
**Includes the following Component Codes:** 82465, 83718, 84478

---

**Panel 80069**

Proprietary information of UnitedHealthcare. Copyright 2023 United HealthCare Services, Inc.



**Commercial Reimbursement Policy**
**CMS 1500**
**Policy Number 2023R0010A**

There are 2 configurations for Panel CPT code 80069:

| **Configuration 1** |
| **Includes the following Component Codes:** 82040, 82310, 82374, 82435, 82565, 82947, 84100, 84132, 84295, 84520 |

| **Configuration 2** |
| **Includes the following Panel Code:** 80048 |
| **Plus the following Component Codes:** 82040, 84100 |

**Panel 80074**

| **Configuration 1** |
| **Includes the following Component Codes:** 86705, 86709, 86803, 87340 |

**NOTE:** CPT code 87340 is a Component Code for both the Panel 80055 or 80081 and the Panel 80074. The Panel 80055 or 80081 takes Precedence.

**Panel 80076**

| **Configuration 1** |
| **Includes the following Component Codes:** 82040, 82247, 82248, 84075, 84155, 84450, 84460 |

**Panel 80081**

Proprietary information of UnitedHealthcare. Copyright 2023 United HealthCare Services, Inc.



There are 2 configurations for Panel CPT code 80081:

| Configuration 1 | | | |
|---|---|---|---|
| **Includes the following Component Codes:** 86592, 86762, 86850, 86900, 86901, 87340, 87389 | | | |
| **Plus one the following CBC or combination of CBC Component Codes:** | | | |
| 85025 | 85027 + 85004 | 85027 + 85007 | 85027 + 85009 |

| Configuration 2 |
|---|
| **Includes the following Panel Code:** 80055 |
| **Plus the following Component Code:**  87389 |

**NOTE:** The CPT code 87340 is a component code of both the Panels 80055 or 80081 and the Panel 80074. The Panel 80055 or 80081 (which includes HIV testing) takes Precedence.

## Surgical Pathology

Surgical Pathology CPT codes 88300-88309 describe gross and microscopic examination and pathologic diagnosis of Specimen(s) submitted. Two or more Specimens separately identified from the same patient are each assigned an individual code reflective of its proper level of service. Under certain circumstances, the physician may need to report the same surgical pathology code for multiple Specimens for the same patient on the same date of service.

Pathology Specimens from the same anatomic site reported with the same Surgical Pathology CPT code may be reported on one line with multiple units.

Duplicate pathology Specimens reported with the same Surgical Pathology CPT code must be reported with a modifier 59, XE, XP, XS, XU, or 91 to receive separate consideration.

## Venipuncture and Specimen Collection

Consistent with CMS, only one collection fee for each type of Specimen per patient encounter, regardless of the number of Specimens drawn, will be allowed. A collection fee will not be reimbursed to anyone who did not extract the Specimen.

Venous blood collection by venipuncture and capillary blood Specimen collection (CPT codes 36415 and 36416) will be reimbursed once per patient per date of service when reported by the Same Individual Physician or Other QHP.  When CPT code 36416 is submitted with CPT code 36415, CPT code 36415 is the only venipuncture code considered eligible for reimbursement. No modifier overrides will exempt CPT code 36416 from bundling into CPT code 36415.

Consistent with CMS, UnitedHealthcare considers collection of a Specimen from a completely implantable venous access device and from an established catheter (CPT codes 36591 and 36592) to be bundled into services assigned a CMS NPFS Status Indicator of A, R or T provided on the same date of service by the Same Individual Physician or Other QHP, for which payment is made. When CPT code 36591 is submitted with CPT code 36592, CPT code 36592 is the only venipuncture code considered eligible for reimbursement. No modifier overrides will exempt CPT code 36591 from bundling into CPT code 36592.

## Laboratory Status Indicator A R T codes

The edits administered by this policy may be found on the following link using the appropriate year and quarter referencing the "Status Code" column:



<table>
<tr><td></td><td align="right">Commercial Reimbursement Policy<br>CMS 1500<br>Policy Number 2023R0010A</td></tr>
</table>

https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/PhysicianFeeSched/PFS-Relative-Value-Files

UnitedHealthcare considers venipuncture code S9529 a non-reimbursable service. The description for S9529 focuses on place of service for a service that is more precisely represented by CPT code 36415 and reported with the appropriate CMS place of service code.

Consistent with CMS, Specimen collection HCPCS code G0471 is reimbursable only when a Specimen is collected from an individual in a skilled nursing facility or by a laboratory on behalf of a home health agency.

**Laboratory Handling**

Laboratory handling and conveyance CPT codes 99000 and 99001 and HCPCS code H0048 are included in the overall management of a patient and are not separately reimbursed.

**Clinical and Surgical Pathology Consultations (80503-80506 and 88321-88325)**

CPT codes 80503-80506 and 88321 – 88325 are reimbursable services only to Reference Laboratories and to providers whose primary specialty is pathology or dermatology.

UnitedHealthcare considers clinical and surgical pathology consultation codes as included in an Evaluation and Management (E/M) service provided for the same patient on the same date of service. If billed with an E/M service, codes 80503-80506 and/or 88321-88325 are not separately reimbursable.

Evaluation and Management Codes for the Laboratory Services Policy

**Drug Assay Codes**

Consistent with CMS, Drug Assay CPT codes 80320-80377 are considered non-reimbursable.  These services may be reported under an appropriate HCPCS code.

For additional information, refer to the Questions and Answers section, Q&A #8

**Surgical Pathology for Prostate Needle Biopsy**

In alignment with CMS, UnitedHealthcare requires surgical pathology for prostate needle biopsy Specimens (including gross and microscopic examination) to be reported with HCPCS code G0416, rather than 88305.  Code G0416 represents 1 unit of service regardless of the number of Specimens examined.  Code 88305 will not be reimbursed for prostate needle biopsy surgical pathology.

For additional information, refer to the Questions and Answers section, Q&A #11

**Respiratory Viral Panel Testing**

Consistent with CMS Local Coverage Determinations, UnitedHealthcare does not consider multiplex Polymerase Chain Reaction (PCR) respiratory viral panels of 6 or more pathogens eligible for reimbursement, and codes 0115U, 0202U, 0223U, 0225U, 87632 and 87633 will be denied.

For additional information, refer to the Questions and Answers section, Q&A #10

| Definitions | |
| --- | --- |
| **CMS NPFS Status A** | **Active Code**. These codes are paid separately under the physician fee schedule, if covered. There will be RVUs for codes with this status. The presence of an "A" indicator does not mean that Medicare has made a national coverage determination regarding the service; carriers remain responsible for coverage decisions in the absence of a national Medicare policy. |

Proprietary information of UnitedHealthcare. Copyright 2023 United HealthCare Services, Inc.



**Commercial Reimbursement Policy**
**CMS 1500**
**Policy Number 2023R0010A**

| CMS NPFS Status R | Restricted Coverage. Special coverage instructions apply. If covered, the service is carrier priced. (NOTE: The majority of codes to which this indicator will be assigned are the alpha-numeric dental codes, which begin with "D". We are assigning the indicator to a limited number of CPT codes which represent services that are covered only in unusual circumstances.) |
|---|---|
| CMS NPFS Status T | Injections. There are RVUS and payment amounts for these services, but they are only paid if there are no other services payable under the physician fee schedule billed on the same date by the same provider. If any other services payable under the physician fee schedule are billed on the same date by the same provider, these services are bundled into the physician services for which payment is made. (NOTE: This is a change from the previous definition, which states that injection services are bundled into any other services billed on the same date.) |
| Component Codes | Identify individual tests that when performed together may comprise a panel. |
| Duplicate Laboratory Service | Identical or equivalent bundled laboratory Component Codes, submitted for the same patient on the same date of service on separate claim lines or on different claims regardless of the assigned Maximum Frequency per Day (MFD) value. |
| Non-Reference Laboratory Provider | A physician or a Pathologist reporting laboratory procedures performed in their office. |
| Panel Codes | Identify, for coding purposes, a group of tests commonly performed as a group or profile. |
| Physician Office Laboratory | A laboratory maintained by a physician or group of physicians for performing diagnostic tests in connection with the physician practice. |
| Precedence | The fact, state, or right of preceding priority; priority claimed because of pre-eminence or superiority. |
| Purchased Diagnostic Tests | When one component (technical or professional) of a diagnostic test is purchased from a laboratory supplier by a physician or laboratory.  Purchased Diagnostic Tests include laboratory or pathology services that are listed in the (CMS) National Physician Fee Schedule with a PC/TC indicator 1, 6, or 8.  Purchased services do not apply to automated or manual laboratory services. |
| Independent Laboratory | An Independent Laboratory is one that is independent both of an attending or consulting physician's office and of a hospital that meets at least the requirements to qualify as an emergency hospital. An Independent Laboratory must meet Federal and State requirements for certification and proficiency testing under the Clinical Laboratories Improvement Act (CLIA). |
| Reference Laboratory | A Reference Laboratory that receives a Specimen from another, Referring Laboratory for testing and that actually performs the test is often referred to as an Independent Laboratory. |
| Referring Laboratory | A Referring Laboratory is one that receives a Specimen to be tested and that refers the Specimen to another laboratory for performance of the laboratory test. |
| Same Group Physician or Other Qualified Health Care Professional (QHP) | All physicians and/or other QHP of the same group reporting the same Federal Tax Identification number. |
| Same Individual Physician or Other Qualified Health Care Professional (QHP) | The same individual rendering health care services reporting the same Federal Tax Identification number. |

Proprietary information of UnitedHealthcare. Copyright 2023 United HealthCare Services, Inc.



**Commercial Reimbursement Policy**
**CMS 1500**
**Policy Number 2023R0010A**

| Specimen | Tissue or tissues that is (are) submitted for individual and separate attention, requiring individual examination and pathological diagnosis. Two or more such Specimens from the same patient (eg, separately identifiable endoscopic biopsies, skin lesions) are each appropriately assigned an individual code reflective of its proper level of service. |
| --- | --- |

| Questions and Answers | |
| --- | --- |
| 1 | **Q:** What place of service should an Independent or Reference Laboratory report when billing?<br><br>**A:** When billing, the place of service reported should be the location where the Specimen was obtained, For example, a Specimen removed from a hospitalized patient and sent to the laboratory would be reported with Place of Service (POS) 21 or 22; a sample taken at a physician's office and referred to the laboratory would be reported with POS 11; if the Independent or Reference Laboratory did the blood drawing in its own setting, it should report POS 81. |
| 2 | **Q:** What provider specialty is eligible to report and receive reimbursement for Laboratory services?<br><br>**A:** As stated in the UnitedHealthcare Provider Administration Guide you may only bill for services that you or your staff perform. If your provider specialty is a Reference Laboratory, report laboratory services appended with modifier 90 to indicate a Reference (Outside) Laboratory. |
| 3 | **Q:** Will identical or equivalent laboratory Component Codes submitted on the same day for the same patient by the Same Group Physician or Other QHP be denied as Duplicate Laboratory Services?<br><br>**A:** Yes, identical or equivalent laboratory Component Codes are denied unless the appropriate repeat laboratory procedure modifier (modifier 59, XE, XP, XS, XU, or 91) is appended to the code(s) submitted. |
| 4 | **Q:** Will consecutive or serial tests provided on the same day to the same patient by either physicians of the same group or multiple providers be denied as a Duplicate Laboratory Service?<br><br>**A:** Yes, consecutive or serial tests are denied unless the appropriate repeat laboratory procedure modifier (modifier 91) is appended to the codes submitted. |
| 5 | **Q:** In what circumstance(s) is it appropriate to report modifier 59 with a laboratory service?<br><br>**A:** When identifying procedures/services that are performed by the same or multiple individuals or Same Group Physician or Other QHP for the same patient on the same day, modifier 59, XE, XP, XS, or XU is appropriate. Multiple individuals may include, but are not limited to, any physician or other QHP, Reference Laboratory, Referring Laboratory or pathologist.  Circumstances include:<br>• Mutually exclusive procedures (e.g., a Panel Code and one of its individual Component Codes reported together).<br>• Repeat laboratory services on Specimens from distinctly separate anatomic sites.<br>• Repeat laboratory services for different species or strains. |
| 6 | **Q:** If a pathologist and a treating physician report identical codes for the same individual on the same date of service, how will each claim be reimbursed?<br><br>**A:** Only the pathologist will be reimbursed. The treating physician may also be reimbursed if modifier 59, XE, XP, XS, XU, or 91 is appropriately reported with the code(s) submitted to distinguish that it was a distinct or repeat laboratory service. |
| 7 | **Q:** Can laboratory tests be performed in the absence of a physician(s) or other QHP(s) documentation or signed physician orders? |

Proprietary information of UnitedHealthcare. Copyright 2023 United HealthCare Services, Inc.

 **UnitedHealthcare**®

**Commercial Reimbursement Policy**
**CMS 1500**
**Policy Number 2023R0010A**

| | |
|---|---|
| | **A:** Yes, laboratory tests will be considered for reimbursement when they meet CMS's documentation requirements. The patient's medical record must include either a signed order from the physician or other health care professional or must document a clear intent for the test to be performed. For example, "run labs" or "check blood" by itself does not support intent to order. The physician's or other QHP's documentation, showing the order or intent to order (electronic requisition is acceptable as noted above), should clearly indicate all tests to be performed. |
| **8** | **Q:** Why is code 83992 added to the Drug Assay Testing section code range 80320 - 80377?<br><br>**A:** CPT code 83992 which was resequenced, is included in the Drug Assay Testing code range, 80320-80377. In CPT, code 83992 has been placed between 80365 and 80366, which falls into the Drug Assay Testing code range. |
| **9** | **Q:** Is a separate collection of the Specimen and order necessary for the appropriate use of modifier 91?<br><br>**A:** Yes, a separate collection with appropriate order is required for proper use of modifier 91. The order may be part of a sequential order or may be a standalone order for the same test, same day and same patient.<br><br>**For Example:** Cardiac enzymes-CPT code 82550 may be drawn at different times on the same date of service (DOS). Reporting 82550-91 for each additional blood draw would be an appropriate use of modifier 91. The DOS on a claim for a laboratory test is the date the Specimen was collected and if collected over 2 calendar days, the DOS is the date the collection ended. |
| **10** | **Q:** Are respiratory viral panels with fewer than 6 pathogen targets reimbursable under this policy? For example, can lab charges be submitted with the appropriate code(s) for 5 or less targets?<br><br>**A:** Yes, respiratory viral panels of 5 or less targets may be considered for reimbursement, when appropriate. |
| **11** | **Q:** How does UnitedHealthcare determine whether a surgical pathology Specimen is for prostate needle biopsy and therefore should be coded with HCPCS code G0416, rather than CPT code 88305?<br><br>**A:** Surgical pathology Specimens for prostate needle biopsy are identified by submission of prostate needle biopsy CPT codes 55700 or 55706, by the same or a different provider reporting with the same or different TIN. |

| Attachments | |
|---|---|
| **Evaluation and Management Codes for the Laboratory Services Policy** | A list of evaluation and management codes applicable to the Laboratory Services Policy. |
| **Laboratory Codes with a PC/TC Indicator 3 or 9** | A list of codes that have been assigned a Professional Component/ Technical Component (PC/TC) Indicator of 3 or 9.<br>*PC/TC Indicator 3:* Technical Component Only code<br>*PC/TC Indicator 9:* The concept of a professional/technical component does not apply<br>These services are not reimbursable to a Reference Laboratory or Non-Reference Laboratory Provider in a facility setting. |
| **Purchased Laboratory Eligible Codes** | A list of laboratory codes that have been assigned a Professional Component/ Technical Component (PC/TC) Indicator of 1, 6, or 8.<br>*PC/TC Indicator 1:* Physician Service Codes (modifier TC and 26 codes)<br>*PC/TC Indicator 6:* Laboratory Physician Interpretation Codes<br>*PC/TC Indicator 8:* Physician Interpretation Codes<br>These services are reimbursable as Purchased Diagnostic Tests when billed with a modifier 90. |

| Resources |
|---|

Proprietary information of UnitedHealthcare. Copyright 2023 United HealthCare Services, Inc.



American Medical Association, *Current Procedural Terminology (*CPT®) and associated publications and services

Centers for Medicare and Medicaid Services, CMS Manual System and other CMS publications and services

Centers for Medicare and Medicaid Services, Health care Common Procedure Coding System, HCPCS Release and Code Sets

| History | |
|---|---|
| 1/1/2023 | Policy Version Change<br>Policy Sections Changed:<br>Policy Lists Updated: Evaluation and Management Codes for the Laboratory Services, Laboratory Codes with a PC/TC Indicator 3 or 9, and Purchased Laboratory Eligible Codes<br>History/Updates Section: Entries prior to 1/1/2021 archived |
| 9/25/2022 | Policy Version Change<br>Policy Section Changed:  Surgical Pathology for Prostate Needle Biopsy; Q&A #11<br>History/Updates Section: Entries prior to 9/27/2020 archived |
| 7/1/2022 | Policy Version Change<br>Policy Sections Changed: Date of Service section updated<br>Laboratory Services Performed in a Facility Setting section updated<br>History/Updates Section: Entries prior to 6/28/2020 archived |
| 1/1/2022 | Policy Version Change<br>Policy Section Changed: Clinical and Surgical Pathology Consultations section updated<br>Removed tables and added attachments for: Evaluation and Management Codes for the Laboratory Services Policy and Purchased Laboratory Eligible Codes<br>History/Updates Section: Entries prior to 1/1/2020 archived |
| 7/1/2021 | Policy Version Change<br>Policy Section Changed: Organ or Disease-Oriented Laboratory Panel Codes section updated |
| 6/27/2021 | Policy Version Change<br>Policy List Update: Laboratory Codes with a PC/TC Indicator 3 or 9 |
| 6/1/2021 | Policy Version Change<br>Policy Section Changed: Place of Service; Documentation Requirements for Reporting Laboratory Services; Q&A #7<br>Policy Section Added: Respiratory Viral Panel Testing; Q&A #10<br>History/Updates Section: Entries prior to 5/26/2019 archived |
| 5/13/2021 | Policy Version Change<br>Attachments Section:  Removed attachment(s) and provided link to source document |
| 3/28/2021 | Policy Version Change<br>Policy List Update: Laboratory Status Indicator A R T Codes lists updated |
| 2/14/2021 | Policy Version Change<br>Policy List Update: Laboratory Codes with a PC/TC Indicator 3 or 9 |
| 1/1/2021 | Policy Version Change<br>Surgical Pathology for Prostate Needle Biopsy section added<br>Policy List Update: Evaluation and Management Codes for the Laboratory Services Policy, Laboratory Codes with a PC/TC Indicator 3 or 9, Laboratory Status Indicator A R T Codes lists updated<br>History/Updates Section: Entries prior to 1/1/2019 archived |
| 5/27/1999 | Policy Approved by the Payment Policy Group |
| 8/31/1998 | Policy implementation by UnitedHealthcare Employer and Individual |

Proprietary information of UnitedHealthcare. Copyright 2023 United HealthCare Services, Inc.

Filing # 187233003 E-Filed 12/03/2023 04:59:50 PM

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2023-026579-CA-01
SECTION: CA44
JUDGE: Lisa Walsh

**Quantum Hospital Pathology, LLC**

Plaintiff(s)

vs.

**UNITED HEALTHCARE OF FLORIDA, INC. et al**

Defendant(s)

_____/

### NOTICE AND ORDER OF ADHERENCE TO COMPLEX BUSINESS LITIGATION SECTION PROCEDURES, MOTION AND MEMORANDUM PRACTICE, PROVISIONS ON HEARINGS AND MANDATORY CONFERRAL REQUIREMENTS

**WHEREAS**, the Complex Business Litigation Procedures and Fla. R. Civ. P. 1.201 Complex Litigation shall apply to all actions in the Complex Business Litigation Section, except to the extent that, in any particular action, they are superseded by an Order.

**WHEREAS**, the Complex Business Litigation Procedures are designed to facilitate the proceedings of cases by the Eleventh Judicial Circuit Complex Business Litigation Section; to promote the transmission and access to case information by the Court, litigants, counsel, and the public; and to facilitate the efficient and effective presentation of evidence in the courtroom.  These Procedures shall be construed and

enforced to avoid technical delay, **encourage civility**, permit just and prompt determination of all proceedings, and promote the efficient administration of justice.

**NOTICE IS HEREBY GIVEN** that all outstanding and future motions pertaining to cases within the Complex Business Litigation Section must adhere to Complex Business Litigation Section Procedures, which are available at the court's website https://www.jud11.flcourts.org/Judge-Details?judgeid=888&sectionid=206

**Any previously filed motion not in compliance with procedures, e.g., memorandum of law where required, must be resubmitted in conformity with the Complex Business Litigation Procedures.**

**Counsel for Plaintiff(s) and Third Party Plaintiff(s) is/are ORDERED** to confirm all parties subsequently named or appearing herein have been served copies of this Notice.  If any subsequently served or named party has not been served with a copy of this notice, Plaintiff and Third Party Plaintiff shall provide the party with a copy of this Notice.

**In addition,** it is

**ORDERED** and **ADJUDGED that the following will apply to all motions, memoranda and evidentiary hearings** as follows:

**Short Motions**

As a general rule, five-minute Motion Calendar motions do not require memoranda of law. Copies of motions and any response shall be submitted through

CourtMap in accordance with the Court's motion calendar procedures posted on its website.

## Motions Requesting a Special Set Hearing

Hearings must be requested using CourtMap which is available on the judge's webpage.  Motions may be scheduled or ruled upon without a hearing, in the court's discretion.

**Content of motions** shall state with particularity the grounds therefore, citing any statute or rule of procedure relied upon; shall set forth the relief sought and shall include the required certification of conferral.  The Court will not consider issues at a hearing on the motion that were not addressed in the motion and memoranda in support of and in opposition to the motion.

## Memoranda Requirements

**These requirements and deadlines may not be waived or altered except by court order.**

**Failure to File and Serve Motion Materials:** CBL 4.4   A motion or opposition unaccompanied by a required memorandum may be summarily rejected or denied.   Failure to timely file a memorandum in opposition to a motion may result in the pending motion being considered and decided as an uncontested motion.  **Motion briefing deadlines are court orders.**

| Motion | Memoranda of law | Page limit | Time deadline | |
|---|---|---|---|---|
| Motion filed by movant | As required by CBL rules | 20 | When filing the motion | Memos which are not filed with the motion will be disregarded |
| Opposition to motion | At time of filing opposition, if needed | 20 | 10 days after service of motion<br><br>as computed in Fla. R. Civ. P. 1.090 | If no response is timely filed, the Court will proceed and may grant the motion as unopposed |
| Reply | If needed, limited to matters raised in the opposition | 10 | 5 days after service of opposition<br><br>as computed in Fla. R. Civ. P. 1.090 | If no reply is timely filed, the Court will proceed |
| Sur-reply | With Court permission only | | | |

**Motions Decided on Papers and Memoranda:** Motions may be considered and decided by the Court without a hearing. CBL 4.5 **A hearing is at the discretion of the Court.**

## Sealed and Confidential Documents

Sealed or confidential documents should be e-filed pursuant to the instructions on the Clerk's e-filing portal.  In Camera inspections shall be conducted as instructed by the Court.

## Evidentiary Hearings

Absent court order, evidentiary hearings are to be held in person. The court's usual assigned courtroom is 3-3, however for larger cases and pursuant to advance request, the hearing may be held in another courtroom.

Prior to the evidentiary hearing:

1. The parties must file an exhibit list, listing pre-marked exhibits intended for use by the parties, at least 5 days prior to the hearing.

2. The parties must bring with them to the hearing an index to all potential trial exhibits.

3. The parties must pre-mark all exhibits as follows:

   Plaintiff, Counter-Plaintiff, Cross-Plaintiff: Exh. 1A, 1B, 1C, for identification (e.g.)

   Defendant, Counter-Defendant, Third-Party Defendant, etc: Exh. A1. A2. A3, for identification (e.g)

4. The parties must exchange all exhibits and meet and confer on objections at

least 48 hours before the hearing.

5. Witnesses may appear by Zoom only in accordance with updated AOs,civil rules, or court order. The party calling any witness by Zoom is responsible for retrofitting the courtroom to ensure such witness can see and hear counsel, the judge,, the jury (if appropriate), that there is no feedback, that the witness may properly be sworn, and that there are no persons in the background coaching the witness nor inappropriate notes or scripts which cannot be viewed by the judge. Any violation of this provision will result in an immediate suspension of a witness' testimony.

In addition, it is ordered as follows:

## MANDATORY ORDER TO CONFER AND CERTIFICATION REQUIREMENT

This case is subject to the Complex Business Litigation Rules.  The rules require that parties meet and confer prior to filing any motion to determine if issues can be narrowed, the appropriate amount of time required for hearing if hearing is requested, and any other issues such as the completion of related discovery.  Meet and Confer under these rules requires **an actual effort** between attorneys, not staff.

It is therefore:  **ORDERED** and **ADJUDGED** as follows:

All parties to a motion must meet the conferral requirements of the division. The motion must contain a certification of the efforts at meet and confer, which shall

include:

- A description of all efforts at a meet and confer, including names of movant and respondent attorneys, dates and method (email, telephone, live meeting) requesting a meet and confer; and

- A description of all dates for meet and confer actually held and the method and names of participating attorneys; and

- Results achieved, including consensus as to amount of time required for hearing, if granted.

The only motions exempt from the meet and confer requirement are Motions for Injunctive Relief Without Notice; Motions for Summary Judgment and Motions to Amend to Add Punitive Damages. **ANY OTHER MOTION** submitted without a certificate of conferral will be rejected by the Court without prejudice.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 3rd day of December, 2023.

2023-02~~~~~~~~~~~~~~~~~~~.41 PM

<u>2023-026579-CA-01 12-03-2023 4:41 PM</u>
Hon. Lisa Walsh

**CIRCUIT COURT JUDGE**
Electronically Signed

**Electronically Served:**
Markus M. Kamberger, mkamberger@thewcmfirm.com
Markus M. Kamberger, mkamberger@thewcmfirm.com
Patrick S Montoya, pmontoya@wcbfirm.com
Patrick S Montoya, alanza@thewcmfirm.com
Patrick S Montoya, ralvarez@thewcmfirm.com

**Physically Served:**

Filing # 187233001 E-Filed 12/03/2023 04:59:47 PM

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: <u>2023-026579-CA-01</u>
SECTION: <u>CA44</u>
JUDGE: <u>Lisa Walsh</u>

**Quantum Hospital Pathology, LLC**

Plaintiff(s)

vs.

**UNITED HEALTHCARE OF FLORIDA, INC. et al**

Defendant(s)

_____/

<u>**ORDER SETTING INITIAL CASE MANAGEMENT CONFERENCE AND TO PREPARE
A MANDATORY CASE MANAGEMENT REPORT**</u>

**WHEREAS**, the Complex Business Litigation Procedures shall apply to all actions in the Complex Business Litigation Section and Fla. R. Civ. P. 1.201 Complex Litigation, except to the extent that, in any particular action, they are superseded by an Order.

**WHEREAS,** the Complex Business Litigation Procedures are designed to facilitate the proceedings of cases by the Eleventh Judicial Circuit Complex Business Litigation Section; to promote the transmission and access to case information by the Court, litigants, counsel, and the public; and to facilitate the efficient and effective presentation of evidence in the courtroom. These Procedures shall be construed and enforced to avoid technical delay, **encourage civility**, permit just and prompt determination of all proceedings, and promote the efficient administration of justice.

**NOTICE IS HEREBY GIVEN** that all outstanding and future motions pertaining to cases within the Complex Business Litigation Section must adhere to Complex Business Litigation Section Procedures, which are available at the court's website:

*http://www.jud11.flcourts.org/About-the-Court/Ourt-Courts/Civil-Court/Complex-Business-Litigation*.

**NOTICE IS HEREBY GIVEN** that on _____ **February 28, 2024** at _____ **9:00AM** via Zoom, the undersigned shall convene a Case Management Conference ("CMC") in this cause.

**The Parties are ordered to provide courtesy copies of <u>all</u> motions and where required, memoranda pertaining thereto, hereinafter filed in this case, to the undersigned Judge via**

CourtMAP as a supporting document to the event. Courtesy copies are not needed to be e-mailed.

Orders, agreed and otherwise, shall be submitted via CourtMAP.

Plaintiff is required to provide a full set of pending motion(s) to dismiss, opposition(s) and reply to chambers a minimum of one (1) week prior to the initially scheduled CMC. MOTIONS FILED WITHOUT COURTESY COPIES UPLOADED TO THE EVENT ON COURTMAP AS SUPPORTING DOCUMENTS MAY NOT BE CONSIDERED.

<u>Any previously filed motion not in compliance with procedures, e.g., memorandum of law where required, must be resubmitted in conformity with the Complex Business Litigation Procedures</u>.

Counsel for Plaintiff(s) and Third Party Plaintiff(s) is/are ORDERED to confirm all parties subsequently named or appearing herein have been served copies of this Notice and Order. If any subsequently served or named party has not been served with a copy of this notice, Plaintiff and Third Party Plaintiff <u>shall</u> provide the party with a copy of this Notice.

Trial Counsel and their clients shall appear via Zoom for the CMC.[1] Failure of any party to attend, including the insurance carrier representative, shall subject that party to sanctions and/or fees. Regardless of the pendency of any undecided motions, Trial Counsel shall meet no less than 30 days in advance of the CMC and address the following which will be included in the Joint Case Management Report, along with other appropriate topics, including those set forth in Fla. R. Civ. P. 1.201(b) Complex Litigation, some of which subjects and topics will be incorporated into a Case Management Order:

1. The name of lead trial counsel for each party, and the name of any unrepresented party;

2. A brief factual statement of the case;

3. Pleading issues, including service of process, venue, joinder of additional parties, theories of liability, damages claimed and applicable defenses;

4. The identity and number of any motions to dismiss or other preliminary or pre-discovery motions which have been filed and the time period in which they shall be filed, briefed and argued;

5. A discovery plan and schedule including the length of the discovery period, the anticipated number of fact and expert depositions to be permitted and, as appropriate, the length and sequence of such depositions;

5.a. A description of pertinent documents and a list of fact witnesses the parties believe to be relevant.

6. Anticipated areas of any expert testimony, the number of experts to be called by each party, timing for identification of experts, and exchange of expert reports;

7. An estimate of the volume of documents and computerized information likely to be the

subject of discovery from parties and nonparties and whether there are technological means which may render document discovery more manageable at an acceptable cost;

8. The possibility of obtaining admissions of fact and voluntary exchange of documents and electronically stored information, stipulations regarding authenticity of documents, electronically stored information, and the need for advance rulings from the Court on admissibility of evidence.

9. The advisability of using the general magistrate for discovery purposes at no cost to the parties; and the advisability of using the general and/or a special magistrate(s) for fact finding, mediation, or discovery disputes or such other matters as the parties may agree upon;

10. The time period, after the close of discovery within which post-discovery dispositive motions shall be filed, briefed and argued, and a tentative schedule for such activities;

11. The possibility of settlement and the timing of Alternative Dispute Resolution, including the selection of a mediator or arbitrator(s);

12. Whether or not a party or parties desire to use technologically advanced methods of presentation or court-reporting and, to the extent that this is the case, a determination of the following:
    a. Fairness issues, including but not necessarily limited to use of such capabilities by some but not all of the parties and/or by parties whose resources permit or require variations in the use of such capabilities;

    b. Issues related to compatibility of court and party facilities and equipment;

    c. Issues related to the use of demonstrative exhibits and any balancing of relevance and potential prejudice which may need to occur in connection with such exhibits;

    d. Such other issues related to the use of the Court's and parties' special technological facilities as may be raised by any party or the Court or its technological advisor, given the nature of the case and the resources of the parties.

13. A good faith estimate by counsel for each party based upon consultation with all of the parties of the costs and fees each party is likely to incur in pursuing the litigation through trial court adjudication;

14. A preliminary listing of the principal legal and factual issues which counsel believe will need to be decided in the case;

15. A preliminary listing of any legal principles and facts that are not in dispute;

16. A good faith estimate by counsel for each party of the length of time to try the case;

17. Whether a demand for jury trial has been made.

Within ten (10) days of the meeting among Trial Counsel, but no less than fourteen (14) days in advance of the Case Management Conference, the Parties shall file a Joint Case Management Report addressing the matters described in paragraphs 1 - 17 above and shall provide a courtesy copy to the Court via CourtMap as supporting documents to the event.

All counsel and parties are responsible for filing a Joint Case Management Report in full compliance with this Order. Plaintiff's counsel shall have the primary responsibility to coordinate the meeting of Lead Trial Counsel and unrepresented parties in person, and the filing of the Joint Case Management Report. If counsel is unable to coordinate such compliance, counsel shall timely notify the Court by written motion to be set and heard on motion calendar or request for a status conference.   Failure to provide the required case management report may subject the violating party(ies) to sanctions and/or fees.

Pursuant to the provisions of Fla. R. Civ. P. 1.201(b)(3), and notwithstanding rule 1.440, at the initial case management conference, the Court will set the trial date or dates no sooner than 6 months and no later than 24 months from the date of the initial case management conference unless good cause is shown for an earlier or later setting. **As provided in the rule, continuance of the trial of a complex action should rarely be granted, and then only upon good cause shown.**

## <u>MANDATORY CASE MANAGEMENT SCHEDULE TO BE FILED</u>

| | |
|---|---|
| ESI EXCHANGE PROPOSAL (including search terms, formats, data sources to be searched, etc) | Proposal -<br><br>Commence Exchange -<br><br>Complete Exchange - |
| MOTIONS TO AMEND/ADD PARTIES<br><br>(Includes Affirmative Defenses) | |
| FACT WITNESS DEPOSITIONS/ DISCOVERY CONCLUDES | |
| INITIAL MEDIATION DEADLINE | On or before |
| NUMBER OF EXPERTS PER PARTY/SIDE | |
| PLAINTIFF/THIRD PARTY PLAINTIFF/CROSS PLAINTIFF(S) DESIGNATE EXPERTS AND COMPLY WITH CBL 6.3 AND DATES OF AVAILABILITY FOR DEPOSITION<br><br>**MUST INCLUDE: EXPERTS** | |

| | |
|---|---|
| **QUALIFICATIONS, REPORT DETAILING OPINION, BASIS FOR OPINION, AND DOCUMENTS RELIED UPON FOR OPINION** | |
| DEFENDANT/THIRD PARTY/CROSS DEFENDANT(S) DESIGNATE EXPERTS AND COMPLY WITH CBL 6.3 AND DATES OF AVAILABILITY FOR DEPOSITION<br><br>**MUST INCLUDE: EXPERTS QUALIFICATIONS, REPORT DETAILING OPINION, BASIS FOR OPINION, AND DOCUMENTS RELIED UPON FOR OPINION** | |
| REBUTTAL EXPERT DISCLOSURE REPORTS DUE<br><br>**MUST INCLUDE: EXPERTS QUALIFICATIONS, REPORT DETAILING OPINION, BASIS FOR OPINION, AND DOCUMENTS RELIED UPON FOR OPINION** | |
| EXPERT DEPOSITIONS COMPLETED | |
| DISPOSITIVE MOTIONS FILED | |
| DAUBERT/FRYE MOTIONS FILED | |
| MOTIONS IN LIMINE FILED | |
| FINAL MEDIATION DEADLINE | On or before |
| FINAL PRETRIAL CONFERENCE<br><br>**THE COURT SHALL ADDRESS ALL PENDING MOTIONS, INCLUDING JURY INSTRUCTIONS, VERDICT FORM, MOTIONS IN LIMINE, DEPOSITION DESIGNATIONS, OBJECTIONS TO EXHIBITS AND FRYE** | |

| **MOTIONS** | |
|---|---|
| | |

[1] A representative of the insurance carrier for any insured party who is **not** such carrier's outside counsel and who has decision making authority without further consultation shall attend.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>3rd day of December, 2023</u>.

<u>2023-026579-CA-01 12-03-2023 4:41 PM</u>
Hon. Lisa Walsh

**CIRCUIT COURT JUDGE**
Electronically Signed

**Electronically Served:**
Markus M. Kamberger, mkamberger@thewcmfirm.com
Markus M. Kamberger, mkamberger@thewcmfirm.com
Patrick S Montoya, pmontoya@wcbfirm.com
Patrick S Montoya, alanza@thewcmfirm.com
Patrick S Montoya, ralvarez@thewcmfirm.com


**Physically Served:**

Filing # 188121638 E-Filed 12/15/2023 12:22:53 PM

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION
DIVISION

Case No.: 2023-026579 CA 44

QUANTUM HOSPITAL PATHOLOGY, LLC,

     Plaintiff,

v.

UNITED HEALTHCARE OF FLORIDA, INC.,
UNITED HEALTHCARE INSURANCE
COMPANY, and NEIGHBORHOOD
HEALTH PARTNERSHIP, INC.,

     Defendants.

_____/

## NOTICE OF APPEARANCE

     PLEASE TAKE NOTICE that James L. VanLandingham of the law firm of Hogan

Lovells US LLP, appears as counsel for Defendants UNITED HEALTHCARE OF FLORIDA,

INC., UNITED HEALTHCARE INSURANCE COMPANY, and NEIGHBORHOOD HEALTH

PARTNERSHIP, INC., and requests that all papers served in this case also be delivered to and

served at the address(es) set forth below.

     Respectfully submitted,

     HOGAN LOVELLS US LLP
     600 Brickell Avenue, Suite 2700
     Miami, Florida  33131
     Telephone:   (305) 459-6500
     Facsimile:   (305) 459-6550

     By:  */s/ James L. VanLandingham*
     James L. VanLandingham
     Fla. Bar No.: 106761
     Email: james.vanlandingham@hoganlovells.com
     gladys.cata@hoganlovells.com (secondary)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 15, 2023, a true and correct copy of the foregoing was served on counsel of record via e-service notification through the Florida Courts E-Filing Portal.

By:   _/s/ James L. VanLandingham_____

Filing # 188305296 E-Filed 12/19/2023 09:49:03 AM

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION
DIVISION

Case No.: 2023-026579 CA 44

QUANTUM HOSPITAL PATHOLOGY, LLC,

     Plaintiff,

v.

UNITED HEALTHCARE OF FLORIDA, INC.,
UNITED HEALTHCARE INSURANCE
COMPANY, and NEIGHBORHOOD
HEALTH PARTNERSHIP, INC.,

     Defendants.

_____/

### NOTICE OF APPEARANCE

     PLEASE TAKE NOTICE that Craig H. Smith of the law firm of Hogan Lovells US LLP,

appears as counsel for Defendants UNITED HEALTHCARE OF FLORIDA, INC., UNITED

HEALTHCARE INSURANCE COMPANY, and NEIGHBORHOOD HEALTH

PARTNERSHIP, INC., and requests that all papers served in this case also be delivered to and

served at the address(es) set forth below.

     Respectfully submitted,

     HOGAN LOVELLS US LLP
     600 Brickell Avenue, Suite 2700
     Miami, Florida  33131
     Telephone:    (305) 459-6500
     Facsimile:    (305) 459-6550

     By: *  /s/ Craig H. Smith*
     Craig H. Smith
     Fla. Bar No.: 96598
     Email: craig.smith@hoganlovells.com
     gladys.cata@hoganlovells.com (secondary)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 19, 2023, a true and correct copy of the foregoing was served on counsel of record via e-service notification through the Florida Courts E-Filing Portal.

By:   _/s/ Craig H. Smith_ _____